### BABICORA DEVELOPMENT CO., Inc., v. EDELMAN.
### No. 2718.

Court of Civil Appeals of Texas. El Paso.
Oct. 14, 1932.

Rehearing Denied Dec. 8, 1932.

S. N. Russell, of El Paso, for appellant.

W. J. Bryan and E. F. Cameron, both of El Paso, for appellee.

PELPHREY, C. J.

Appellee instituted this suit against appellant alleging: That on or about July 7, 1925, while he was in the employ of appellant in the Republic of Mexico at a salary of $75 per month and board, he received a serious and permanent injury; that by reason of such injuries, he had a claim and cause of action against appellant; that thereafter appellant agreed with him that if he would not prosecute his claim or sue appellant that it would keep him in its employ for the remainder of his life at a salary of $75 per month and his board; and that he accepted said proposition and continued to work for them until he was discharged subsequent to March 17, 1929. He sued to recover damages for breach of the contract alleged.

Appellant answered by general demurrer, certain special exceptions, and a general denial.

Upon its exceptions being by the court overruled, it filed its third amended answer, in which it generally excepted to appellee's second amended petition, generally denied the allegations thereof, and further alleged that appellee assumed the risk incident to the horse falling on him and injuring him in 1925; that the injuries received by him were only slight and caused by his own negligence; that on or about November 1, 1925, he voluntarily quit appellant's employ and left the ranch of appellant with the express purpose of remaining away permanently, but returned on or about December 25, 1925, and was again employed, at will; that any cause of action, if any, which appellee may have had against appellant accrued more than two years before the filing of his suit and therefore was barred; that the contract as alleged by appellee, not being in writing, was contrary to the statute of frauds; that appellee had no cause of action against appellant for the injuries he received, and therefore any contract made by appellant's agents to employ him for life was without consideration; that if appellant's superintendent ever agreed with appellee to employ him for life, then such superintendent acted beyond the scope of his authority, and such agreement is not binding on appellant; and that appellant through its superintendent on or about February 9, 1929, for good and sufficient cause discharged appellee. Appellant also specially denied that any of its agents ever made the agreement alleged by appellee.

Special issues were submitted to the jury which, together with the jury's answers, are:

"1. Do you find from a preponderance of the evidence, that subsequent to the 7th day of July, 1925, the plaintiff in good faith believed he had a claim for damages as compensation for personal injuries suffered by him while in the service of the defendant? Answer yes or no.

"In connection with this issue you are charged that one asserts a claim in good faith against another, when same is asserted under an honest belief as to the legal validity thereof, whether same in fact is, or is not a legal demand.

"Answer: Yes.

"2. Do you find from a preponderance of the evidence that subsequent to July 7, 1925, it was contracted and agreed in substance, between the plaintiff and William M. Farris, purporting to act for and on behalf of the defendant, that if plaintiff would not sue the said defendant, that defendant would keep him in its employ for the remainder of plaintiff's life, at a salary of Seventy Five Dollars ($75.00) per month, and his board, and that plaintiff would work for his life for such compensation? Answer yes or no.

"Answer: Yes.

"3. Do you find from a preponderance of the evidence that in making the contract aforesaid, if you have found that such contract was made, the said William M. Farris, acted in accordance with authority conferred upon him by the defendant, Babicora Development Company? Answer yes or no.

"In connection with this issue you are charged that the authority of an agent to act for a principal is derived from his principal. In determining whether an agent has the authority to perform an act, or acts, for his prin-

cipal, regard may be had to the nature and character of the business entrusted to the agent by the principal. .

"Answer: Yes.

"4. Do you find from the evidence, that prior to the 4th day of March, 1929, the defendant, acting by and through its manager and agent William M. Farris, notified the plaintiff that he was discharged from the service of the defendant, Babicora Development Company? Answer yes or no.

"Answer: No.

"5. Do you find from a preponderance of the evidence, that from on or about March 18, 1929, to on or about the 31st day of January, 1931, the plaintiff acted under the orders and direction of defendant's agent, William M. Farris, and at all times held himself in readiness to report for duty at the ranch of the defendant in the Republic of Mexico? Answer yes or no.

"Answer: Yes."

At the request of appellant the court submitted the following:

"2-a. Do you find from a preponderance of the evidence that W. M. Farris, defendant's superintendent, was authorized by defendant at the time in question to employ plaintiff as a cowhand on its ranch in Mexico for the remainder of his life at a salary of $75.00 per month and board, as alleged in plaintiff's petition? Answer yes or no.

"Answer: Yes.

"2-b. Do you find from a preponderance of the evidence that defendant, through W. M. Farris, its superintendent, did on or about July 7, 1925, agree with plaintiff to employ him as a cowhand on its ranch in Mexico during the remainder of his life at a salary of $75.00 per month and board? Answer yes or no.

"Answer: Yes."

Upon this verdict the court rendered judgment that appellee recover the sum of $2,355, and appellant has prosecuted its appeal therefrom to this court.

Appellant contends that the court erred in refusing its motion for a peremptory instruction because: (1) Appellee failed to show by any credible evidence that the appellant or any of its authorized agents ever agreed to employ appellee on appellant's ranch for life in consideration of his refraining from suing appellant; because there was no evidence showing that W. M. Farris was authorized to employ appellee for life and no evidence that any such agreement by him was ever ratified by appellant; because Farris positively testified that he never agreed to employ appellee for life; that he had no authority to make such an agreement; that no such agreement had ever been made by appellant with any of its employees; that appellee, though he had been associated with the representatives and other employees of appellant, had never mentioned the existence of the agreement pleaded by him and, as admitted by him, had never made claim upon appellant; and that the acts and conduct of appellee subsequent to March 1, 1929, were so inconsistent with his statement of an agreement for life employment as to render his testimony unworthy of consideration and belief, because the undisputed evidence showed that appellee never had claimed to have a bona fide cause of action against appellant arising out of his injuries; and because it was shown by the overwhelming weight of the evidence that, if Farris ever agreed to employ appellee for life, such agreement was made more than two years before the commencement of appellee's cause of action and was barred.

■ While we shall not here attempt to review the testimony of appellee on the questions thus presented, suffice it to say that he testified to having been injured on appellant's ranch while in the discharge of his duties; that the horse furnished him by appellant reared up when he attempted to turn him to the left; that by reason of such action of the horse he was thrown off the horse, rolled down a steep hill, and was seriously injured by the horse falling on him; that Mr. Farris took charge of him, took him to Babicora, sent him to Dr. Safford in El Paso, and later sent him to California at appellant's expense in an effort to cure him; that after returning from California where he had been unable to see Mr. Hearst, as requested by Mr. Farris, he was offered a lifetime job on the ranch by Mr. Farris, if he would not sue appellant for his injuries; that this proposition was made to him by Farris on December 24, 1925, and he went immediately to appellant's ranch and began work; that he worked on the ranch until March 17, 1929, when he came to El Paso; and that he never had any notice that he was discharged until January 30, 1931.

We have concluded that his evidence was sufficient to make an issue of fact as to the making of the agreement alleged.

■ Appellant has, in its brief, gone to considerable length in a recitation of facts which it contends renders appellee's testimony unworthy of belief, yet the question of his credibility was one for the jury and we cannot substitute our judgment for theirs as to that question.

■ The acceptance of a proposal may be by act, 13 C. J. p. 275, and we are of the opinion that appellee's testimony showing that immediately after the offer was made to him, he went to the ranch, began work, and continued to work there for more than three years, is sufficient to raise the issue of an acceptance by him.

■ The question of the sufficiency of the evidence to show that Farris had authority to make the contract is a more serious matter. The authority of Farris having been specially

denied by appellant, the burden was on appellee to introduce evidence establishing it. Appellee's pleading as to the authority of Farris, reads: "That said contract of settlement was made with one Farris, who was the general manager in charge and control of the company's affairs and of its ranch in Mexico, and had authority to make said contract and said contract was made shortly after July 7th, 1925, and was communicated to the Executive Officers of the Company, whose mail (main) office is in San Francisco, California, and whose names to this plaintiff are unknown, and said contract was accepted by them, and became and was a binding contract upon said defendant."

Therefore, if appellee is to recover, it must be by showing that Farris had either the express or implied power to make the contract sued upon; or that his act in so doing was ratified by appellant.

From an examination of the statement of facts we find no evidence showing either an express authority or ratification. Consequently, the question we are called upon to decide is: Did the making of the contract fall within the implied powers of Farris as general manager or superintendent of appellant's ranches?

█ We think it may be conceded that Farris was the general agent of appellant, and if the implied powers of a general agent are sufficient to cover this character of act, or if the facts surrounding the agency are sufficient to raise an issue as to the act being within his implied powers, then appellant's assignment should be overruled. A decision of the question will depend upon a proper understanding of implied or incidental powers of a general agent.

As to such powers, we find in 2 C. J. § 219, p. 578, the following: "Implied authority is limited to the purposes for which the agency was created and to the acts and duties ordinarily entrusted to such an agent. It is also limited by the usual course of dealing in the business in which he is employed and as agent has no implied power to do acts that are unusual, extraordinary or unnecessary, however advantageous to the principal's interests the agent may believe them to be; for such acts he should secure special authority from the principal."

And, again, in section 222, we find: "A general agency, however, does not import unqualified authority; and the implied power of an agent, however general, must be limited to such acts as are proper for an agent to do, and cannot extend to acts clearly adverse to the interests of the principal, or for the benefit of the agent personally; and an agent has no implied authority to do acts not usually done by agents in that sort of transaction, * *; the most general authority is limited to the business or purpose for which the agency was created and it is not sufficient that the agent's act or conduct merely relates to the business of his agency."

In 1 Mechem on Agency, § 715, it is said:

"It is a fundamental principle in the law of agency that every delegation of authority 'general' or 'special', carries with it, unless the contrary be expressed, implied authority to do all those acts, naturally and ordinarily done in such cases, which are reasonably necessary and proper to be done in the case in order to carry into effect the main authority conferred. * * *

"The acts which are deemed authorized under this rule are those which are naturally and ordinarily necessary, which therefore are the usual incidents of the act in question, the acts which the principal presumptively would have included without question if his attention had been called to them,—the acts which the ordinary competent person already familiar with the situation and with the ordinary methods of business, or a similar person having the situation made clear to him,—like a juror,—and considering the matter in the light of everyday experience, would say without serious hesitation formed a natural and ordinary part of the main act authorized."

█ The facts here show that Farris was either the general manager or superintendent of appellant's ranches in Mexico and that he employed and discharged the help on such ranches. Are such facts sufficient to raise an issue as to his implied authority to employ appellee for life under the above-quoted rules? We think not. There is nothing in the record to show that the owners of ranches ordinarily give their injured employees employment for life; therefore, the making of this contract was not such an act as was ordinarily intrusted to the managers of ranches, nor was it in the usual course of dealing in the ranching business.

Neither do we think it can be said that the making of this contract was necessary and proper to be done in order to carry into effect the main authority conferred in Farris. There is no evidence which would have justified an ordinary competent person, familiar with the situation and with the ordinary methods of business, considering the matter in the light of everyday experience, to say without serious hesitation that the making of this contract by Farris formed a natural and ordinary part of the management of appellant's ranches.

It is true that the record here reflects that Farris had authority to employ the help needed on the ranches of appellant, but the authority to employ embodies only the right to make contracts of a usual and reasonable sort. 1 Mechem on Agency, § 988.

The following cases support our holding: Fisher v. Roper Lumber Co., 183 N. C. 485, 111 S. E. 857, 35 A. L. R. 1417; Stephens v. Lumber Co., 160 N. C. 107, 75 S. E. 933, 41 L.

R. A. (N. S.) 1141; Rua v. Coal Co., 84 W. Va. 47, 99 S. E. 213; General Paint Corporation v. Kramer (C. C. A.) 57 F.(2d) 698; Bohanan v. Boston & M. R. R., 70 N. H. 526, 49 A. 103.

In this case the existence of the agency is admitted and the only question is as to the extent of the authority of that agent; therefore, the cases cited by appellee do not apply.

█ It appears from the record that a power of attorney was in existence to Farris from appellant, but it was not introduced in evidence; therefore, we have no means of knowing what powers might have been conferred upon him by it. We cannot agree with appellee that we should presume, it not being introduced by appellant, that it contained the authority to execute such an extraordinary and unusual contract as the one upon which he depends.

There are numerous other questions raised by appellant which, in view of the disposition we have decided to make, need not be considered.

The evidence failing to raise an issue as to the authority of appellant's agent to make the contract sued upon, the judgment must be reversed, and the cause remanded.