### THOMPSON et al. v. CRIM et al.

### No. 5013.

Court of Civil Appeals of Texas. Texarkana.

Feb. 25, 1937.

Rehearing Denied March 11, 1937.

Ramey, Calhoun & Marsh, of Tyler, for plaintiffs in error.

McEntire, James & Shank, of Tyler, and R. T. Jones, of Henderson, for defendants in error.

JOHNSON, Chief Justice.

This is an action in trespass to try title to 81 acres of land, a part of the John Darley survey in Rust county. Plaintiffs, Sallie Bell Hammer and others, were the children of Beall Thompson (deceased, 1911) and wife, Sallie Thompson (deceased, 1912). Plaintiffs inherited the land from their mother. They were then minors and L. B. Thompson was appointed guardian of their estate. On application of the guardian the probate court of Rusk county entered an order purporting to authorize, and an order approving, the exchange by the guardian of the 81 acres of land belonging to his wards for 77 acres owned by W. B. Thompson in the George Cooper survey in Rusk county. Whereupon L. B. Thompson as such guardian executed and delivered a deed conveying the 81-acre tract to said W. B. Thompson; and W. B. Thompson and wife executed and delivered a deed conveying the 77-acre tract to L. B. Thompson as guardian of said minors. The deeds, as well as the orders of the probate court, recite upon their face the transaction exchanging the lands.

Defendants are the surviving wife and heirs of W. B. Thompson, deceased, and those claiming under them. Defendants pleaded not guilty, and specially pleaded:

"That the plaintiffs and each of them, after having attained their respective majorities, with both actual and constructive knowledge of all the facts above mentioned, elected to ratify and confirm said sale, and claimed the land received in said exchange as their own; that they and each of them, after so attaining their majorities and with knowledge of the facts sold and exchanged their interest in the 77 acres of land received in said exchange, and appropriated the proceeds of the sale to their own use and benefit. That by reason of the facts hereinbefore stated, they adopted and ratified the action of their said guardian and elected to claim the land received by him for their benefit, in said transaction, and are now estopped to claim the land described in their pleadings.

"Further answering herein the defendants show that on the 29th day of January, A.D. 1931, the plaintiffs with full knowledge of the facts hereinbefore set out, and with full knowledge of their rights, and for the purpose of evidencing their election to hold the land received by their guardian, and to ratify and confirm his acts as aforesaid, executed and delivered to these defendants a deed conveying and quit-claiming unto them (defendants) all of their (plaintiffs') right, title and interest in the land described in plaintiffs' pleadings, and they (plaintiffs) are thereby estopped to deny the title to these defendants in the land described in their pleadings."

Plaintiffs in a supplemental petition, further supplemented by a trial amendment, replied to defendants' answer and admitted that they had sold the 77 acres of land received by their guardian in the aforesaid exchange of lands, and that they had signed a quitclaim deed to the 81 acres now in controversy. But they denied that at the time they sold the 77 acres or at the time they signed the quitclaim deed to the 81 acres that they had any notice or knowledge of the facts of said exchange transaction between their former guardian and W. B. Thompson, or that they had ratified or confirmed the same; and specially alleged that, at such times, they were in complete ignorance of any notice or knowledge of such facts; and that they were misinformed by those procuring the quitclaim deed from them as to the facts, and as to their rights, and as to the purposes for which the quitclaim deed was procured, and that no consideration was paid for the quitclaim deed. Plaintiffs tendered the consideration which they had received from the sale of the 77 acres and asked that the court adjust the equities in that respect.

At the conclusion of the evidence, the court instructed a verdict against all the

plaintiffs, except Mrs. Sallie Bell Hammer, A. E. Thompson, and Homer Thompson. The case was submitted to the jury on three like questions, one applicable to each of the three plaintiffs above named. We quote the question applicable to plaintiff Mrs. Sallie Bell Hammer:

Special issue No. 1: "Do you find from a preponderance of the evidence that the plaintiff, Mrs. Sallie Bell Hammer, at the time she signed the quitclaim deed to Mrs. Maud Thompson, in evidence before you, knew, or had information, that the land therein described was land which her guardian had theretofore deeded to W. B. Thompson, in exchange for the 77 acre tract conveyed to L. B. Thompson, as guardian of herself and others?"

Answer: "No."

Special issues No. 2 and No. 3, applicable to A. E. Thompson and Homer Thompson, were answered in the affirmative. Judgment was entered against all the plaintiffs except Mrs. Sallie Bell Hammer. Upon the verdict of the jury in her favor, judgment was entered awarding Mrs. Sallie Bell Hammer recovery of an undivided 1/9 interest in the 81 acres of land, subject to an oil and gas lease covering the land which had been executed by defendants after procuring the quitclaim deed and before the filing of this suit, to L. O. McMillan and now owned by the Tidal Oil Company, and also subject to the payment into court by Mrs. Sallie Bell Hammer for defendants the sum of $167.50 as the amount received by her from sale of the 77 acres of land. Defendants have by writ of error appealed to this court.

Appellants assign as error the action of the trial court in overruling their motion for an instructed verdict.

Appellants do not contend but that the orders of the probate court and the deed of the guardian attempting to exchange the 81 acres belonging to his wards and reciting the facts of such exchange transaction evidencing its invalidity upon their face were without authority in the law and were subject to the collateral attack made by appellees. Crier v. Cowden (Tex.Civ.App.) 251 S.W. 822.

Appellants' contention is to the effect that appellee Mrs. Sallie Bell Hammer, shortly after her disability of infancy was removed by marriage, sold the 77-acre tract; that the deed to her guardian to the 77-acre tract recited that it was conveyed to him in exchange for the 81-acre tract of his wards; that such recitals, being in her chain of title to the 77-acre tract, charged her with constructive notice of the facts; that regardless of the want of any actual notice, the legal effect of such constructive notice upon her acts in selling the 77-acre tract and appropriating the proceeds thereof after her disability of infancy was removed, constituted as a matter of law a ratification of the conveyance by her guardian of her interest in the 81-acre tract; and that by reason thereof she is now estopped to assert the invalidity of that conveyance.

Appellee Mrs. Sallie Bell Hammer testified that she was thirteen months old when her mother died, that she did not know her mother owned any land until shortly before this suit was filed; that she married when she was a little past fourteen years of age; that about the time she married she conveyed some land to Mr. Lonnie Barber (the deed does not appear in the record and we are unable to state the date of this conveyance) and received $167.50 for it; that she did not know of the transaction whereby her grandfather (who was her guardian) traded for the 77 acres; that she did not know that the land she was selling to Barber was land for which her grandfather (guardian) had traded, but she thought that it was a part of the land which her grandfather had purchased for them with the money left by her mother; that at the time she signed the quitclaim deed to the 81 acres she was ignorant of such facts and of her interest in it; and that she signed the quitclaim deed at the request of and relying upon the representations of appellant Mrs. Maude Thompson that she had no interest in the land covered by the deed, but that it was land which her grandfather had traded to appellants; that no consideration was paid for the execution of the deed. Appellant Mrs. Maude Thompson in her testimony denied that she had made the representations testified to by Mrs. Hammer at the time she procured Mrs. Hammer's signature to the quitclaim deed.

■ We do not sustain appellants' contention that the constructive notice visited upon appellee Mrs. Hammer by virtue of the recitals in the deed to the 77 acres, together with her act in selling the 77 acres after her disability of infancy was removed, is sufficient as a matter of law to conclusively charge her with ratification of or estoppel with respect to the unauthorized conveyance by her guardian of her interest in the 81-acre tract. Ratification, as well as estoppel, implies actual or imputed knowledge as distinguishable from constructive

notice. In Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 2, p. 2090, § 964, it is said: "If the party originally possessing the remedial right has obtained full knowledge of the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware and all undue influence is wholly removed so he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then this confirmation is binding and his remedial right, defensive or affirmative, is destroyed. If, on the other hand, the original undue influence still remains, or if the act is simply a continuation of the former transaction, or if the party wrongfully supposes that the original contract or transaction is binding, or if he has not full knowledge of all the material facts and of his own rights, no act of confirmation, however formal, is effectual; the voidable nature of the transaction is unaltered."

In Humble Oil & Refining Co. v. Jeffrey (Tex.Civ.App.) 38 S.W.(2d) 374, 377, it is said: "It is settled law that ratification involves the intention to ratify." In Gaines v. Traders & General Ins. Co. (Tex.Civ. App.) 99 S.W.(2d) 984, 990, it is said: " 'To justify a conclusion that the defendant is estopped, it must be made to appear that he spoke or acted with actual or imputed knowledge of the circumstances, and that he knew or ought to have known or foreseen that the plaintiff would be deceived.' 17 Tex.Jur. p. 138, 139."

A more specific reason why we do not think the trial court erred in overruling appellants' motion for an instructed verdict is that the constructive notice alone relied upon by appellants will not, as a matter of law, overcome or control over the affirmative showing in the evidence of the lack of two of the essential fact elements involved in charging a late minor with having ratified his former guardian's unauthorized sale of his real estate, namely, (1) knowledge of his right to disaffirm the conveyance, and (2) intention to ratify. Humble Oil & Refining Co. v. Jeffrey (Tex.Civ.App.) 38 S. W.(2d) 374; Miller v. McAden (Tex.Civ. App.) 253 S.W. 901; Fletcher v. A. N. Koch Co. (Tex.Civ.App.) 189 S.W. 501. The general rule is expressed in 12 R.C.L. p. 1142, § 37, as follows: "While it is stated in many of the cases that a guardian's sale, so irregularly made as not to be valid, is void, the use of this term is inaccurate, since

it is universally held that the sale may be ratified by the ward when he reaches full age and becomes sui juris. It cannot, however, be ratified by him during his minority, nor can any act of the guardian bind the ward by way of ratification. The fact, therefore, that the proceeds of the sale were applied to the ward's benefit does not estop him to avoid the sale and reclaim the land. But, if after reaching full age, he accepts the purchase price, *with knowledge of the facts,* or takes possession of or sells property acquired with the proceeds of the sale, *with such knowledge,* or does other positive acts in affirmance of the sale, or neglects to assert his claim within a reasonable time, after reaching his majority to the injury of the vendee, he thereby ratifies the sale, and confirms the title of the purchaser. If he thus ratifies the sale, he ratifies it as a whole, and makes himself subject to any portions of the contract which may be disadvantageous to him." (Italics ours.)

The rule in Texas is expressed in 23 T. J., p. 746, § 52, as follows: "Although some courts take a contrary position, by the weight of authority a ratification is binding only when made with knowledge of the right to disaffirm. This is the view taken by the courts of Texas, and before it will be held that there was a ratification it must appear that the party charged with having ratified or confirmed the transaction knew, at the time of the acts relied on as showing such confirmation, that the former transaction could be disaffirmed. It is not, however, necessary to produce direct testimony as to the former minor's knowledge of his rights; that fact may be shown by circumstantial evidence. But no presumptions will be indulged in respect of the matter."

Appellants further contend that the issue submitted was insufficient in findings of fact by the jury to support the judgment rendered in favor of appellee Mrs. Sallie Bell Hammer in that such judgment implies the cancellation of the quitclaim deed executed by her to appellants to the 81 acres of land. We are unable to sustain appellants' contention in this respect. It will be noted that appellants affirmatively pleaded in the trial court that appellee executed the quitclaim deed for the purpose of ratifying the unauthorized exchange of the land by her former guardian. The findings of the jury that at the time of signing the quitclaim deed appellee did not know and had no information that the land described therein had theretofore been deeded by her guardian

in exchange for other lands is sufficient to hold that the deed did not operate as a ratification of the guardian's transaction. Actual or imputed knowledge on the part of Mrs. Hammer was necessary to charge her with ratification. It is further noted that appellants did not in the trial court take any exceptions to the charge of the court upon the grounds now complained of, nor did appellants request further issues.

The judgment is affirmed.