**Ruby WILLMAN, Appellant,**

v.

**TEXACO, INC., Appellee.**

**No. 8591.**

Court of Civil Appeals of Texas, Amarillo.

March 29, 1976.

Rehearing Denied April 19, 1976.

Bowers & Cotten, Claude W. Pete Harland, Lubbock, for appellant.

Crenshaw, Dupree & Milam, J. Orville Smith, Lubbock, for appellee.

ROBINSON, Justice.

Plaintiff Ruby Willman filed suit for personal injuries, which she alleged occurred when she was struck by a falling pipe at the Richland Hills Texaco Station. Defendants are Claude Faubus, Texaco, Inc., and Sam E. Fox. Faubus was the operator leasing the station from Texaco, Inc. Fox was one of two owners of the land who leased the building and land to Texaco, Inc., and was Texaco's consignee. Fox also had an agreement with Faubus concerning the operation of the station. Texaco, Inc. filed a motion for summary judgment contending that Faubus was an independent contractor. Plaintiff answered contending that the written agreements between Texaco, Inc. and Faubus were a sham and subterfuge, and that Texaco controlled the details of Faubus' operations in such a way as to create a master-servant relationship and to make Texaco, Inc. liable for the negligence of Faubus and his employees. The trial court granted Texaco, Inc.'s motion for summary judgment and severed the cause of action against Texaco, Inc. Plaintiff appeals from a judgment that she take nothing from Texaco, Inc. Affirmed.

In a summary judgment proceeding, the question is not whether the summary judgment proof raises fact issues with reference to essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972).

In the case before us, the burden is on Texaco, Inc., to establish that there is no fact issue that it had a master-servant relationship with Claude Faubus d/b/a Richland Hills Texaco Station.

The written agreements between Texaco, Inc. and Faubus are substantially the same as those which the Supreme Court considered in *Texas Co. v. Wheat*, 140 Tex. 468, 168 S.W.2d 632 (1943). The written instruments were the "Lease Contract," "Letter Modifying Rental Clause," and a "Sales Contract." In *Wheat*, the Supreme Court affirmed an instructed verdict for Texas Company and held that the contract as evidenced by those written agreements created the relation of landlord and tenant, and not the relation of master and servant.

Nevertheless, the form of the written agreement will not prevent the existence of a master-servant relationship if such agreement is a mere sham, cloak, or subterfuge designed to conceal the true legal relationship between the parties. *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964). Plaintiff, Ruby Willman, contends that the lease between Texaco and Faubus was a mere sham or subterfuge and that the Texaco-Faubus relationship was conducted by the terms of the contract between Faubus and Fox.

The summary judgment evidence shows that, in anticipation of his obtaining the Texaco lease, Faubus made an agreement with the consignee, Fox, whereby Fox agreed to perform certain of Faubus' obligations under the Texaco-Faubus lease and Fox undertook specified obligations to Faubus. Fox agreed to pay the utilities on the station and Faubus' rent to Texaco and to furnish gasoline and stocks of oil, filters, and batteries to Faubus on consignment. Faubus agreed to pay Fox the normal retail price less 4½¢ per gallon for the gasoline which Faubus sold, with Fox to receive the difference between the price Faubus paid and the price charged by Texaco. Plaintiff alleged that Faubus agreed with Fox to keep the station open a certain number of hours, to keep the premises and restrooms clean, to attend a two-week training school

offered and paid for by Texaco, and to attempt to keep employees in Texaco uniforms.

Fox testified that Texaco, Inc. knew of his agreement with Faubus. As a Texaco, Inc. consignee, Fox sells and distributes Texaco products on a commission basis with title to all Texaco products remaining in Texaco, Inc. until such time as the product is sold by Fox. Fox sometimes extended more credit than Texaco authorized. When he did so, Texaco charged him and deducted the charges from his check. Texaco products are sold to service station retailers on a cash on delivery basis. If Fox did not collect for a service station delivery, then he was responsible for payment. The credit that Fox extended to Faubus was his and not Texaco's. He testified that to his knowledge, Texaco did not tell Faubus how to run the station or inspect it and it did not tell him to tell Faubus how to run it. He said that he did not exercise any supervision over Faubus. He stated that Faubus furnished all the employees, maintained the station, and ran it.

Faubus testified that no representative from Texaco called on him, that neither Texaco nor Fox exercised control over his business, and that the details of operating the station were his. He had no credit arrangement with Texaco. His credit arrangement was with Fox.

The summary judgment evidence includes the documents evidencing the written agreement between Texaco and Faubus, the affidavit of Texaco's district sales manager, and the deposition testimony of Claude Faubus and Sam Fox. As heretofore stated, the written agreements do not evidence a master-servant relationship. The Texaco sales manager, Faubus, and Fox all expressly deny that Texaco exercised any actual control of the details or manner in which Faubus operated the station. The testimony of Faubus was adverse to his own interest. The testimony of Fox was clear, direct, and positive, and we find no circumstance in the evidence tending to discredit his testimony. We find no summary judgment evidence that Texaco exercised actual control of the details of operation or that Faubus' agreement with Fox modified the Texaco-Faubus agreement.

We conclude that the summary judgment evidence shows that the relationship between Texaco, Inc. and Faubus was that of lessor-lessee and that there is no genuine issue of fact to the effect that the relationship was that of master and servant.

The judgment of the trial court is affirmed.